## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

FRANK LATELL, KATHLEEN
LATELL, LATELL CROIX
APARTMENTS, LTD., LATELL
PEPPERTREE APARTMENTS, LTD.,

      Plaintiffs,

v.                            Case No:  2:13-cv-565-FtM-29CM

SANTANDER BANK,

      Defendant.

_____

## ORDER

Before the Court is Plaintiffs' Motion to Compel Discovery (Doc. 146). Defendant responded in opposition.  Doc. 150.  For the reasons set forth below, Plaintiffs' motion is denied without prejudice.

Plaintiffs, Frank Latell and Kathleen Latell (the "Latells"), are general partners of Latell Croix Apartments, Ltd. ("Croix") and Peppertree Apartments, Ltd. ("Peppertree").  Doc. 85[1]  ¶¶ 5, 7.  Defendant was the servicer of Croix's and Peppertree's mortgage loans.  *Id.* ¶¶ 14, 15.  The Latells were jointly and severally liable for the mortgage loans.  *Id.* ¶ 16.  Plaintiffs attempted to negotiate a loan modification but allege that one of Defendant's representatives advised them that they could not receive a modification until the loans were in default.  *Id.* ¶ 19-21. Plaintiffs, in reliance on this conversation, allowed the mortgages to go into default.

---

[1] Plaintiffs' Fourth Amended Complaint is now the operative pleading in this case.

*Id.* ¶ 23.  Foreclosure actions were filed in the state court, and the parties went to mediation but Plaintiffs were unable to receive loan modifications.  *Id.* ¶¶ 31-32. The properties were sold in foreclosure. *Id.* ¶ 36.

Plaintiffs brought the present case against Defendant alleging that Defendant made fraudulent misrepresentations and fraud in the inducement related to Plaintiffs' mortgage loans.  *Id.* ¶ 42-55.  Plaintiffs allege that they were told by Brooke Radcliff, a representative of Defendant, that they would receive a loan modification after they defaulted on the mortgage loans and that they relied on this information to their detriment.   *Id.*

Plaintiffs now file this motion to compel seeking all documents responsive to Request 2 in Plaintiffs' Second Request for Production.  Doc. 146 at 1.  Plaintiffs request:

> A copy of any and all Servicer Workout Action Templates (SWAT) produced by SANTANDER BANK, Peter Triano, or any other employee or representative of Defendant indicating the course of action recommended to Fannie Mae with response to Plaintiffs and/or Plaintiffs' property.

Doc. 146 at 2.   Defendant asserted the following objection to Plaintiffs' request:

> Defendant objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege and the work-product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of prior requests in Plaintiffs' Request for Production and Plaintiffs' First Request for Production. To that end, Defendant refers Plaintiffs to its Privilege Log in Response to Plaintiffs' Request to Produce and the following Bates numbers therein:   Santander 000503, Santander 000507, Santander 000512, Santander 000516, Santander 000520, Santander 000524, Santander 000530, Santander 000533, Santander 000536, Santander 000540, Santander 000565,

> Santander 000569, Santander 000585, Santander 000589,
> Santander 000595, Santander 000599, Santander 000603,
> Santander 000608, Santander 000619, Santander 000623,
> Santander 000653, Santander 000656, Santander 000696,
> Santander 000699, Santander 000702, Santander 000706,
> Santander 000711, Santander 000715. Defendant further
> refers Plaintiffs to its Privilege Log served simultaneously
> herewith.

*Id.* at 2-3.

After the review of Defendant's June Privilege Log (Doc. 150-1) and Defendant's November Privilege Log (Doc. 150-3), the Court directed Defendant to file more complete privilege logs evidencing the existence of the attorney-client or work-product privileges.   Doc. 151.   In compliance with the Order, Defendant provided updated privilege logs along with an affidavit of Peter Triano, Senior Vice President of Santander, supporting Defendant's opposition to producing the requested documents.   Docs. 153, 153-2 at 1.   The parties also notified the Court that despite receiving the updated privilege logs, the parties were unable to reach an agreement regarding Plaintiffs' request.   Doc. 154.   Accordingly, this motion is ripe for review.

As grounds for this request, Plaintiffs first state that Mr. Triano agreed to produce these documents during his August 13, 2015 deposition.   Doc. 146 at 2. Next, Plaintiffs argue that these documents are not protected by the attorney-client privilege or work-product doctrine.   *Id.* at 3.   Finally, Plaintiffs state that these documents are relevant to the claims asserted, and Plaintiffs have no other practical means for obtaining this information.   *Id.*

Defendant responds that the Servicer Workout Action Template ("SWAT") forms are protected from disclosure by the work-product doctrine.   Doc. 150 at 1. Defendant states that the SWAT forms are "forms prepared by Defendant, as Fannie Mae's agent and servicer, and sent to Fannie Mae periodically regarding the recommended strategy for foreclosing and/or enforcing defaulted loans."   *Id.* at 2. Defendant first states that although the SWAT forms were discussed during Mr. Triano's deposition and that Mr. Triano stated that he did not personally have any objection to producing the files with SWAT forms, Plaintiffs' counsel stated that this agreement was subject to any legal objections the Defendant's counsel may make. *Id.* at 2 n. 3.   Defendant also argues that Plaintiff's motion is untimely.   *Id.* at 3. Finally, Defendant argues that these forms were prepared after the April 1, 2010 defaults and in anticipation of the foreclosure litigation.   *Id.* at 5.   Thus, Defendant alleges the documents are protected by the work-product doctrine.   *Id.*

The Court first will address Plaintiffs' argument that Mr. Triano agreed at his deposition to produce the documents.   Plaintiffs do not provide any citations to the deposition identifying when Mr. Triano allegedly agreed to produce the documents. Doc. 146 at 2.   Defendant provides a citation to the deposition, but the portion of the deposition cited does not appear to be related to the SWAT forms.   Doc. 150 at 2 n. 7.   Defendant cites to the deposition at page 24 line 20 through page 25 line 1.   *Id.* The deposition states in pertinent part beginning on page 22 line 14, the following:

> Q:   What was Fanny's [sic] Mae's involvement in the consideration of any type of loan modifications?

A.      Well, particularly to the Latell loans, Mr. Priest had offered a modification request that was deemed unacceptable by the bank. And by the bank, that would be by me, the workout officer.

We had a phone call conversa -- I had phone call conversations with those at Fanny [sic] Mae about the requested modification offered by Mr. Priest. And it was a non-starter for both Fanny [sic] Mae and for Santander. So nothing was formally presented because it was a modification we would have never considered as a bank.

We also delegated authority to decide what we think is a legitimate proposal and what's not as servicer. And so, therefore, we presented verbally. It was not something that we were willing to do. And so it was denied.

Q.      Okay. And I'm kind of getting ahead of myself because I have later questions about this. But since we're already on it, do you recall what the proposal was for Mr. Priest?

A.      I believe the proposal was something along the lines of a ten-year no interest or ten years 2 percent interest, no amortization payments.

Q.      Interest only, you mean?

A.      Interest only, yes.

Q.      Okay.

A.      And just either 2 percent or no percent or basically just, you know, we'll see in ten years and balloon it in ten. And that was just a nonstarter.

Q.      Okay. Do you know if that submission was ever made in writing?

A.      No. I know it wasn't.

Q.      Oh, okay. So Mr. Priest had called -- he called you?

A.      Oh, was it made in writing by the borrower?

Q.      Yes.

> A.    Yes, I believe that it was.
>
> Q.    Okay. And do you know who that would have been submitted to when that writing occurred?
>
> A.    That was submitted to me.
>
> Q.    Okay. Would you still have copies of that in your records if such a written request was made?
>
> A.    I'm sure we would in the file.
>
> Q.    Okay. And again, your attorney may ultimately object to it in the future, but do you have any personal objection, should I service a request for production for those documents?
>
> A.    No objection.

Doc. 138-1 at 22-25.   Based on the Court's reading of that section of the deposition, the parties were discussing a form completed by Mr. Priest discussing a loan modification proposal rather than a form completed by Mr. Triano discussing foreclosure strategies or enforcing defaulted loans.   Without more, the Court finds this argument that Mr. Triano agreed to produce the documents is without merit.

Next, Defendant argues that Plaintiffs' motion is untimely because it was filed after the discovery deadline.   Doc. 150 at 1.   Because the Court extended the discovery deadline (Doc. 152), the Court finds that the motion is timely.

Now the Court will address whether the SWAT forms are protected by the work-product doctrine.   Rule 26(b)(3)(A) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney,

consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).   Those materials, however, may be discovered if the materials are "relevant to any party's claim or defense and proportional to the needs of the case"[2] and the party seeking the discovery has a substantial need for the materials and cannot, without undue hardship, obtain substantially equivalent materials by other means.   Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).   "The party 'asserting the work-product privilege has the burden to prove that the documents sought are protected work product.'"   *Everbank v. Fifth Third Bank*, 2012 WL 1580778 *2 (M.D. Fla. 2012) (quoting *Hernandez v. Wilsonart Int'l,* 2010 WL 2653223 (M.D. Fla. 2010)).

Documents prepared in the normal course of business are not protected by the work-product doctrine.   *Everbank*, 2012 WL 1580778 at *2.   Some documents may serve a dual purpose, wherein the records generally may have been prepared in the normal course of business but in a particular instance the documents were prepared in anticipation of litigation.   *Id.*   "The Middle District of Florida has recognized the 'determinative question [of the work-product privilege] is whether the prospect of litigation was the primary motivating purpose behind the creation of a particular document.'"   *Id.* at 3 (quoting *United States Fidelity & Guaranty Co. v. Liberty Surplus Inc. Corp.*, 630 F. Supp. 2d 1332, 1337 (M.D. Fla. 2007)).   There is no bright line rule to distinguish when a document is created within the ordinary course or business versus when the document protected under the work-product doctrine. *Everbank*, 2012 WL 1580778 at *3.

---

[2] Fed. R. Civ. P. 26(b)(1).

Here, Defendant objects to the production of the SWAT forms based on the work-product doctrine.   Doc. 150 at 4.   Defendant states that the forms at issue were prepared by Defendant, as agent and servicer of the foreclosure plaintiff, Fannie Mae.   *Id.* at 5.   Defendant states that all of the forms requested were prepared after the April 1, 2010 default on the loans and in anticipation of the foreclosure litigation. *Id.*

Defendant also provided an affidavit of Mr. Triano.   Doc. 153-2.   Mr. Triano attests that for Fannie Mae loans serviced by Defendant, it was a requirement that once a loan was in default, it was immediately referred to foreclosure.   *Id.* at 3. Defendant would prepare SWAT forms once a loan was in default and submit them to Fannie Mae for review and approval.   *Id.*   Mr. Triano states that the purpose of the SWAT forms was to advise Fannie Mae of the status of the defaulted loans and the foreclosure process, and to present an action plan to proceed.   *Id.*   Mr. Triano also states,

> the information contained in the SWAT Forms includes i) information about the loan, the property, and the default, ii) foreclosure litigation status and litigation strategy, and iii) recommendations for foreclosure case strategy, including any potential settlement options such as consent foreclosure judgments, loan modifications, reinstatements, or loan sales.

*Id.*   According to Mr. Triano, the SWAT forms prepared in connection with Latell Croix and Peppertree were prepared after the loans were in default and were being referred to foreclosure.   *Id.* at 3-4.

While these documents arguably could be found to be created in the normal course of business because they were required to be completed once a loan was in default, here the Court finds that the prospect of litigation was the primary purpose of the documents, because the documents were created after the loans went into default and the documents discuss the foreclosure process and provide recommendations for foreclosure case strategies and potential settlement. Accordingly, the Court finds that these documents are protected from disclosure by the work-product doctrine.

Documents protected by the work-product doctrine can be discovered if the requesting party can show that the documents are relevant to any claim or defense, the party has a substantial need for the materials and cannot, without undue hardship, obtain substantially equivalent materials by other means.   Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).   Here, neither party disputes the relevance of the documents. Plaintiffs, however, have the burden of proving that they have a substantial need for the documents and that they have no other means of obtaining equivalent material. *Id.*   Plaintiffs allege that the SWAT forms are relevant to claims asserted in this action and that there are no other practical means for obtaining the information sought.   Doc. 146 at 3.   While the Court agrees that the documents are relevant to the asserted claims and Plaintiffs likely have a need for the documents, Plaintiffs do not allege or provide any information detailing their substantial need for the documents.   Plaintiffs do not provide the Court with any information to assist the

Court in determining whether this information is discoverable.   Thus, Plaintiffs have failed to meet to their burden.

ACCORDINGLY, it is hereby

**ORDERED:**

Plaintiff's Motion to Compel Discovery (Doc. 146) is **DENIED without prejudice**.

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of February, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record